## No. 8359.

### HENRY ABRAHAM VS. WIDOW CHARLES LOB.

Specific compliance cannot be required from a purchaser of real estate where the title ten-
dered is not clear and good, and not such as he is bound to accept.

Where a tutor sells at private sale his individual share of a piece of real estate, against
which his minors' mortgage stands recorded, the share is transferred burdened with the
encumbrance, which continues to attach thereto until removed.

Where the property, part of which was thus conveyed, is offered for sale under a judgment
in partition, and it appears that the price corresponding to the minors' share, is not paid
to the tutor then in office, but that a similar sum was paid, years previous, to one who
was then tutor, who had then no authority to sell, and who has since ceased to be such,
and the sale is made on terms at variance with those fixed by the family meeting and
approved by the court, the minors' share was not divested and no title thereto did
pass to the adjudicatee.

The property of minors can be sold only upon the observance of legal exigencies and upon
settlement of the price of sale with one having authority to receive the same and who can
make the title.

APPEAL from the Civil District Court for the Parish of Orleans.
  *Monroe, J.*

*Breaux & Hall* for Plaintiff and Appellant.

*C. E. Schmidt* for Defendant and Appellee:

1.  By the statute of 1869 (Sess. Acts, p. 207) re-enacted in the Revised Statutes of 1870, as
Sec. 2667, it was provided that, "when heirs of a succession hold property in common,
and it is the wish of any one of them, or of a minor represented by his tutor or tutrix, to
effect a partition, on the advice of a family meeting duly convened, etc., said property
may be sold at private sale," etc.

This law clearly limited the right to a partition by private sale of property in which minors
had an undivided interest, to the case of a partition between co-heirs of the same succes-
sion.

It was not until the 16th February, 1878, that the said Sec. 2667 of the Rev. Statutes was so
amended as to authorize a partition by means of a private sale whenever any persons
(though not co-heirs as aforesaid) held property in common with minors. (Acts of Regular
Session of 1878, No. 25, p. 47).

The first part of the phrase, viz: "When heirs of a succession hold property in common,"
applies to and controls what follows. It is as if the law had said: "When heirs of a suc-
cession hold property in common and it is the wish of any one of them, or of the tutor or
tutrix of such one as is a minor," etc.

While it is true that it is the province of the Courts, and not of the legislature, to construe
laws, yet, the Courts have held, that the exposition of statutes by subsequent legislative
bodies, has weight, though not a controlling authority, in regard to the construction of
the statutes. Sedgwick on Stat. and Const Law, 2d ed., p. 214; Coutant vs. The People,
11 Wend. 511; Rex vs. Loxdale, 1 Burr, 447; Pike vs. Megoun, 44 Mo. 491.

The construction we contend for is that given to the Statute of 1869, in the case of Durand
vs. Dubuclet, 24 An. 156, the Court holding that the provisions of the Code and of the
statute might well be incorporated in the same act, which would read thus: "The sale
of the property of minors shall be authorized by the Judge and made at public auction,
after having been duly advertised in the manner required for other judicial advertise-
ments, unless it be the will of any of the heirs interested therein to have the sale made
at private sale, in which event it may be sold at private sale, on the advice of a family
meeting," etc.

48

Abraham vs. Lob.

Besides, the law of 1869 authorized a private sale of property in which minors were interested with other heirs, on the advice of a family meeting, "for the appraised value of the property, said appraisement to be made and the terms of said sale to be fixed by the family meeting."

Now here, the family meeting merely declared that the price offered for the interest, real and personal, of the minors in the succession of their father, was a very fair one, and conducive to their interest. If this be considered substantially a valuation, it was a valuation simply of a specific interest in a succession, and not of the particular real property sought to be partitioned, and, therefore, there was not here the appraisement contemplated by the law and essentially requisite to the validity of the sale.

The proposition at pp. 3 and 4 of appellant's brief, that the minors held their interest in common with one another, and hence, that its sale could be effected under the Act of 1869, loses sight of the fact that the title of the Act indicates that it is one passed to authorize the sale of minors' property in a certain way, in order to effect a partition. And yet, appellant, in his brief, p. 7, declares that no partition between the minors was here sought for.

Hence, the pretended private sale in October, 1871, of the minors' interest in the real property in question here, was ineffectual to divest their title.

Counsel for plaintiff, as stated by the Judge *a quo*, contended in the District Court, (R. p. 201) that the family meeting relative to the private sale, was not intended to authorize, without further and ulterior proceedings, the perfection of the sale of the minor's interest, and that the fair inference was, that said interest was to be thereafter sold at public sale ; and yet, in this Court, their sole reliance is upon the alleged private sale.

2.  The so-called suit in partition brought in November, 1871, by the surviving commercial partners of David Rosenberg, against his widow individually and as tutrix of his minor children, before the late Second District Court for the Parish of Orleans, is conceded to have been brought before a court without jurisdiction *ratione materiæ*, and to have been unavailing to confer title. Boutté vs. Boutté, 30 An. 182; Buddecke vs. Buddecke, 31 An. 572.

3.  The subsequent suit, styled "in partition," in the Sixth District Court, conducted apparently as an original proceeding, never culminated in a real sale ; its sole object being to go through certain forms with the view of confirming the private sale previously made. No money, except the trifling sum of $50, or notes, were realized under the pretended sale ordered in this case. This proceeding lacked the essential features of a ratification or confirmation of acts tainted with illegality and already consummated. Rev. C. C. Art. 2272, (2252) ; Decuir vs. Lejeune, 15 An. 571.

4.  The Sixth District Court ordered the sale of the property to be made on the terms recommended by the family meeting. Those terms were cash, yet the property was advertised for sale for one-third cash, and the balance on a credit of one and two years in notes bearing 8 per cent. interest. So that, in fact, the alleged sale of the 18th January, 1879, under the decree of the Sixth District Court, was not made on the terms required by that decree, and was therefore no judicial sale at all.

5.  The price not having been paid under the last so-called partition sale, there were no proceeds to be divided, and no partition thereof to be homologated, as required by Art. 1374, (1296) C. C., and Art. 1029, C. P.

6.  The pretended sale was treated as the end of the proceedings, and an anomalous motion made for its confirmation, when, even if there had been a real sale, it would only have been a preliminary step to the partition.

7.  Actual partition of the proceeds of sale, and the homologation of said partition are necessary to the validity of every division of property effected by judicial authority between minors and majors. The homologation is necessary to bind the minors. Suc. of Devereux, 13 An. 334.

8.  Another fatal objection to the title tendered defendant is, that it is encumbered with the general mortgage of the minors upon their mother's undivided sixth.

There never was any real judicial sale of the property to effect a partition between its owners; but even had there been such a sale, the minors' general mortgage upon their tutrix' share would not have been shifted to the proceeds of sale, but would have continued to attach to the property, until replaced by a special mortgage, or until the rights of all the minors had been liquidated and satisfied at their majority or emancipation. Life Association of America vs. G. L. Hall, 33 An. 49.

9.  The defendant had the right to require, as she did, a valid and unencumbered title from the plaintiff, 11 La. 551; 6 R. 324; 9 R. 414; 6 L. 484. None such was tendered her, and she cannot be kept in suspense and made to wait until the plaintiff shall succeed, if he ever can, in perfecting his title. She is therefore entitled to be relieved from any obligation under the proposed contract of sale, and the judgment of the court a qua should be changed into an absolute and final one in her favor.

. The opinion of the Court was delivered by

BERMUDEZ, C. J. This is a suit for specific performance. Its object is to compel the defendant to comply with the terms of sale of certain real estate which she had agreed to buy.

The answer is, that one-third of the property does not belong to the plaintiff and that he cannot give a clear and good title to it.

The lower court dismissed the suit, and the plaintiff appealed.

· Deeming the judgment one of *non-suit*, the appellee prays that it be amended, so as to make it final and absolute in his favor.

The plaintiff claims to have acquired the property in question from Simon Berkson, who himself acquired it, as adjudicatee, at a judicial sale made to effect a partition thereof. The parties, plaintiffs therein, were Scherck & Berkson, and the defendants were Mrs. Rosenberg, a surviving wife, in community, and her minors, the issue of her marriage with her deceased husband.

· It appears that in 1871, the property in question was purchased, share and share alike, by D. Rosenberg and his commercial partners, · Scherck & Berkson. Subsequently, in the same year, Rosenberg died, leaving a widow and minor children, his interest in the property being appraised at $3,333.33, and that in the partnership, at $8,867.91. After taking an inventory, the widow was confirmed as tutrix. It was then thought proper to sell the sixth interest of the minors in the succession of their father, to Scherck & Berkson. A family meeting recommended that it be so done for $5,250, which was settled for in cash and notes by the purchasers. The widow sold her sixth interest to the same parties for a like price.

It was subsequently considered that this transaction was tainted with nullity and, consequently, that the title had not passed.

A suit in partition was then brought before the Second District Court, to arrive at a judicial sale of the property. Judgment was rendered to that end; a family meeting was called to fix terms; the prop- was advertised and adjudicated to Scherck & Berkson, and an act was passed to transfer title to them.

This proceeding was afterwards treated as a nullity, because the court had no jurisdiction in the premises.

In 1878, therefore, Scherck & Berkson brought suit before the Sixth District Court, for a partition, against the widow in community, who was then absent and who had married again, without having been retained in the tutorship of her children, and also, against those minors. A tutor was appointed to fill her place as tutrix. Simultaneously, they applied to the Second District Court for an inventory, appraisement and family meeting, both courts giving cumulatively similar orders. The terms of sale were cash; the property was advertised, one-third cash, the balance on a credit of one and two years for notes bearing interest.

The property was offered for sale and adjudicated to Berkson.

No cash was paid; no notes were furnished. The act of sale was executed by the auctioneer. It contains a recital of facts, made by Scherck & Berkson, in which they explain how and why no money and notes or consideration was furnished; the reason being, that the money had been paid to Mrs. Rosenberg in 1871, at the time of the private sale, and when she was still tutrix.

The inscription in favor of the minors against their mother, as their tutrix, has never ceased to be extant on the mortgage register of this parish, and no order of court has ever been procured for its erasure.

There can be no doubt that the undivided sixth of Mrs. Rosenberg was sold by her ever since 1871; but it passed encumbered with the mortgage in favor of her children. However much, in the partition proceedings, that sale may appear to have been treated as a nullity, the same was none the less real and valid as to her. There is nothing in the record to show that title was ever reconveyed to her and that the money was ever returned by her. So that there never was any judicial sale of her share in the property.

Whatever the doctrine invoked be, that, by the judicial sale of encumbered real estate, the mortgage is shifted to the proceeds, it can receive no application in the present instance, in which there was no judicial sale whatever. This is glaring, for the reason that the sixth interest of Mrs. Rosenberg had passed by contract in 1871, long before the alleged judicial sale, and was not therefore divested at that time or in that mode.

Pretermitting what fatal irregularities are claimed to exist in the partition proceedings, it is undeniable that the price of adjudication, as regards the minors, was paid neither in cash, nor according to the terms of the advertisement, nor otherwise.

The argument that Mrs. Rosenberg had received that price in 1871,

at the date of the private sale, which was treated by her and the purchasers as a nullity, cannot stand on its own bottom.

If the tutrix had then no right to sell, she had no right to receive the price, which it would have been her duty to return, as soon as the sale was considered and treated by all as of no effect. How could, and did she then bind the minors in receiving that price?

The deed made by the auctioneer, embodying the recitals made by the original apparent purchasers, shows a sale without any consideration paid, and is, on its face, such as conveyed no title of ownership. The property of minors, no doubt, can be sold and an irrevocable title made to it, but this can take place only after the essential forms of the law have been complied with and on payment of the price of sale to one, at the time of sale, in authority to receive it and give acquittance therefor as the proceeds of the sale thus made.

In the present instance the statement refutes itself, that the price of the undivided sixth of the minors in the property, the object of this suit, alleged to have been judicially sold in 1879, was paid to their mother and unauthorized tutrix in 1871, some *eight* years *previous* to the institution of the partition suit, in which it is alleged that it was, adjudicated, and who had ceased to be tutrix long before the pretended judicial sale.

The judgment of the lower court having passed upon a litigated controversy, in which both parties have as fully developed their means of attack and defense as was practicable, should be considered as finally and absolutely adjusting and setting at rest the differences at stake.

·· Viewing it in that light,

It is ordered and decreed that the judgment appealed from be taken as rendered in favor of defendant, rejecting plaintiff's demand, and that, thus taken, it be affirmed with costs.

Fenner, J., recused, having been connected with proceedings on the subject matter of this suit.